IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SUREFOOT L.C.,<br><br>Plaintiff,<br><br>vs.<br><br>SURE FOOT CORPORATION,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION<br><br>Case No. 2:06-CV-554 TS |

I. INTRODUCTION

Plaintiff Surefoot L.C. (Surefoot Utah) brings this action against Defendant Sure Foot Corporation (Sure Foot N.D.) seeking a declaratory judgment of (1) no trademark infringement arising from its use of the mark SUREFOOT; (2) the invalidity or limitation of alleged trademark rights that Sure Foot N.D. has asserted against it and (3) that any trademark infringement claim, unfair competition, or dilution claims are barred by equitable doctrines.

Defendant moves to dismiss the entire Complaint for lack of jurisdiction. It contends that the Court lacks subject matter jurisdiction under the Declaratory Judgment Act

1

because there is no actual case or controversy presented.  Defendant also moves to dismiss the third cause of action for declaratory judgment on equitable doctrines for the failure to state a claim for which relief can be granted.

The Declaratory Judgment Act only supports jurisdiction in the event of an "actual controversy."[1]  Plaintiff has not shown a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  Therefore, Defendant's Motion to Dismiss for lack of jurisdiction is granted.

## II.  STANDARD OF REVIEW

"When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations."[2]  When resolving a factual dispute under 12(b)(1), the Court may consider affidavits and other matters outside the complaint.[3]

## III.  JURISDICTION

A.  Controversy Requirement

Defendant contends that the Court lacks subject matter jurisdiction under the Declaratory Judgment Act because there is no actual case or controversy presented.

---

[1] 28 U.S.C. § 2201 ("In a case of actual controversy within its jurisdiction, . . . any court of the United States, . . . may declare the rights and . . . of any interested party seeking such declaration . . .").

[2] *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000).

[3] *Wheeler v. Hurdman,* 825 F.2d 257, 259 n.5 (10th Cir. 1987) ("Unlike the strict limitations under 12(b)(6) against considering matters outside the complaint, a 12(b)(1) motion . . . can include references to evidence extraneous to the complaint without converting it to a Rule 56 motion.").

"Federal courts may only decide cases or controversies . . . [this] requirement is reflected in the Declaratory Judgment Act, which limits application of the remedy to cases of 'actual controversy.'"[4] The case or controversy needed for declaratory judgment jurisdiction "must exist as of the date of the filing of the declaratory judgment action."[5] "The declaratory plaintiff bears the burden of establishing the existence of a controversy by a preponderance of the evidence."[6]

"The test for an actual case or controversy in trademark actions is two pronged (i) has the defendant's conduct created a real and reasonable apprehension of liability on the part of the plaintiff and (ii) has the plaintiff engaged in a course of conduct which has brought it into adversarial conflict with the defendant."[7] "An indirect threat of suit is sufficient to satisfy the first prong."[8]

> Analysis, therefore, properly begins with whether plaintiff's apprehension of being sued by defendant was objectively real and reasonable. . . . this prong is established if defendant's actions create in plaintiff a reasonable apprehension of being sued for infringement. And, the proper focus in this regard is on defendant's conduct and statements, because apprehension

---

[4] *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 965 (10th Cir. 1996) (citing U.S. Const. art. III, § 2, and quoting 28 U.S.C. § 2201(a)).

[5] *Jervis B. Webb Co. v. Southern Sys., Inc.*, 742 F.2d 1388, 1398 (Fed. Cir. 1984).

[6] *Cardtoons*, 95 F.3d at 966.

[7] *Menashe v. V Secret Catalogue, Inc.*, 409 F.Supp.2d 412, 421 (S.D. N.Y. 2006); *Cardtoons*, 95 F.3d at 965-66 ("In an intellectual property case, an actual controversy exists when . . . (2) the declaratory defendant's conduct has created a reasonable apprehension on the part of the declaratory plaintiff that it will face suit if it commences or continues the activity at issue.").

[8] *Id.* 409 F.Supp. at 421.

alone, if not inspired by defendant's actions, does not give rise to an actual controversy. Furthermore, while direct evidence of threatening contacts initiated by the defendant or a background of litigation between the parties is strong evidence of a reasonable apprehension of litigation, an objectively reasonable apprehension of imminent litigation must be determined from the totality of the circumstances.[9]

The second element is not at issue in this case. The parties dispute only whether the defendant's conduct created a real and reasonable apprehension of liability on the part of the plaintiff.

B.    Findings of Fact for Rule 12(b)(1) Motion

The Court finds as follows: On September 2, 1998, Defendant's outside counsel sent Plaintiff a cease and desist letter informing it that Defendant was the owner of the Sure Foot mark, that Plaintiff's use of the mark created a likelihood of confusion and had, in fact, created actual confusion at a recent retailer show.[10] Defendant stated that it "views this matter seriously, but believes that litigation is in neither party's best interests."[11] Thereafter followed a series of communications between the parties, sometimes directly and sometimes through counsel, in an attempt to settle the dispute. The communications by Defendant consistently reiterated the allegations of confusion, demanded Plaintiff stop using the mark, and referenced litigation:

> [W]e advised you, we are currently experiencing actual confusion in the marketplace. . . . [We] remain confident of our rights to the mark and to ultimately prevailing if we go to court. Nevertheless, we are not excited

---

[9] *Dunn Computer Corp. v. Loudcloud, Inc.,* 133 F.Supp.2d 823, 827 (E.D.Va. 2001) (citations and footnotes omitted).

[10] Pl.'s Ex. 7.

[11] *Id.*

4

about the reasonable prospect of going to court and paying our attorneys lots of money. . . . [12]

On July 20, 1999, Defendant's outside counsel wrote Plaintiff refuting the legal arguments Plaintiff had made regarding its right to use the mark, again demanding that Plaintiff cease using the mark, and stating:

> As you may recall, we are counsel to Sure Foot . . for its trademark and unfair competition litigation and related matters. Your letter . . . was forwarded to me for response.
>  . . . Sure Foot feels it has no option but to seek legal redress. . . .
> In sum, Sure Foot continues to believe that litigation is in neither party's best interest. Nevertheless, it cannot accept your absolute refusal to change your name. Absent your agreement to do so, Sure Foot will pursue other more formal avenues of relief available to it. [13]

The correspondence continued: . . . neither of us wants to incur the cost of a lawsuit if we can reasonably avoid it."[14] "In good faith, I should have heard from you by now, especially based on the fact that I'm trying to resolve this issue without going to court."[15]

On December 14, 1999, Plaintiff's president wrote rejecting the latest settlement offer, making a counteroffer, and asserting there was no confusion.[16] The December 14, 1999 letter ended the correspondence because Plaintiff never received a reply.[17]

---

[12]Pl.'s Ex. 8 (May 19, 1999 letter).

[13]Pl.'s Ex. 11, 1-2.

[14]Pl.'s Ex. 13 (August 25, 1999 letter).

[15]Pl.'s Ex. 14 (September 28, 1999 letter).

[16]Def's Ex. 16.

[17]Shay Decl. ¶ 31; *accord* Complaint, at ¶ 15 ("This disappearance reasonably led Surefoot UT to believe Sure Foot ND had totally given up its objections to Surefoot UT's usage of the SUREFOOT mark.")

5

On September 29, 2000, Plaintiff applied to the United States Patent and Trademark Office to register the mark SUREFOOT as used with certain services. Its application was issued on June 25, 2002.

According to Plaintiff's President, this sequence of events--the correspondence which it interpreted as threats of litigation, followed by Plaintiff's vigorous denial and then the period of inaction--led Plaintiff to believe that Defendant "had decided to forego any legal action" . . . . " [A]fter a period of communications spanning 15 months and ending in December 1999, Sure Foot ND ceased its complaints, stopped making threats of court action and, in essence, disappeared. . . this disappearance reasonably led Surefoot UT and me to believe that Sure Foot ND's conduct amounted to an implied assurance that Sure Foot ND would not file trademark infringement litigation."[18]

On August 1, 2002, Defendant filed an Opposition and Petition for Cancellation regarding Plaintiff's registration of the mark. Subsequently, Plaintiff filed three additional Applications for use of the SUREFOOT mark and Defendant filed Notices of Opposition for each.[19]  In May 2006, the parties stipulated to consolidation of the four proceedings into a single proceeding before the Trademark Trial and Appeal Board (TTAB).[20]  The parties previously stipulated to several continuances of the individual proceedings to pursue settlement.[21]

---

[18]Shay Decl. at ¶ 31-32.

[19]Def.'s Ex. A at 1-2.

[20]*Id.*

[21]Def.'s Ex. B.

Defendant's letters in 1998 and 1999, read together, "presented a threat of litigation, which was not very well disguised."[22] Although these indirect threats of suit did not contain a deadline, the letters started with a cease and desist demand and thereafter consistently reiterated Defendant's allegation of actual confusion, demanded Plaintiff cease using the mark, reaffirmed that Defendant would enforce its rights, and implied that it would file suit by its reference to its hopes to avoid litigation expenses by working something out. Plaintiff interpreted the letters as threats of suit and responded in kind: "it is my firm belief that if forced to, we will prevail in litigation. . . ."[23] "As I stated before I would like to avoid litigation but not at the expense of harming our business."[24]

Based upon Defendant's letters, there could have been an apprehension of suit for infringement as a result of the letters. However, according to Plaintiff's President, by two years later, Plaintiff was under no apprehension of the filing of an action. By these admissions, made in the Complaint and in the Shay Declaration, Plaintiff expressly denies the existence of any apprehension of suit in 2002.

Plaintiff filed this declaratory judgment action on July 7, 2006, six years after the last letter from Defendant.

---

[22]*Barbarian Rugby Wear, Inc. v. PRL USA Holdings, Inc.*, 2006 WL 2089926, *4 (S.D. N.Y. 2006).

[23]Pl.'s Ex. 10.

[24]Pl.'s Ex. 12.

C.  Discussion

Having expressly denied any apprehension of suit in 2002, Plaintiff must show that Defendant's conduct since then created a real and reasonable apprehension of liability - - an apprehension that must have existed on the date it filed this action.  For this reason, the Court finds Plaintiff's reliance on the *Agridyne* case, inapposite.   Plaintiff relies on *Agridyne* for the proposition that Defendant's explicit charges of infringement in 1998 and 1999 "has rendered apprehension irrelevant, and one need say no more."[25]  But *Agridyne* involved a "current charge" of infringement.  In the present case, as noted, Plaintiff admits that two years after the last explicit charge of infringement it had no apprehension of suit.  This admission, combined with the passage of over six years since the last charge of infringement, distinguish *Agridyne*.

Turning to the issue of objective apprehension of litigation on the filing date of this action, Plaintiff contends that several factors recently gave rise to its real and reasonable apprehension of an infringement suit.  The first factor is the "ambiguous" nature of the TTAB administrative proceedings, their slow pace,[26] and the filing of the more recent of Defendant's Oppositions to Plaintiff's most recent trademark applications.[27]  However, as

---

[25]*Agridyne Technologies, Inc. v. W.R. Grace & Co.-Conn.*, 863 F.Supp. 1522 (D. Utah 1994) (quoting *Genentech Inc. V. Eli Lilly & Co.*, 998 F.2d 931, 936-37 (Fed. Cir. 1993) abrogated by *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)).

[26]Shay Decl. at ¶ 35-36.

[27]*Id.*

8

Plaintiff acknowledges, circuit courts have uniformly held that "TTAB proceedings do not give rise to declaratory judgment jurisdiction."[28]

Plaintiff has shown no evidence that Defendant's conduct has delayed the TTAB proceedings or otherwise caused their purported slow pace. The evidence is to the contrary--that the parties have jointly stipulated both to continuances and to the eventual consolidation of all of their TTAB matters into a single proceeding.

Plaintiff also contends that the TTAB proceedings are ambiguous because they do not determine infringement. But this is true of all TTAB proceedings, and as noted above, the filing of objections in TTAB proceedings do not by themselves give rise to declaratory judgment jurisdiction.[29]

The second factor advanced as a basis for apprehension of suit is Plaintiff's President's belief that Plaintiff's continuing economic success during the pendency of the TTAB proceedings has made it a more attractive litigation target.[30] Plaintiff has not shown how this is related to conduct by the Defendant.

The third factor consists of two statements by Defendant in its Memorandum in support of its Motion to Dismiss.[31] These statements address the estoppel by laches issue. Plaintiff contends that the statements are a threat to file an infringing action in the near future. But, as noted above, the reasonable apprehension must have existed at the time

---

[28] Pl.'s Opp. at 8.

[29] *E.g. Topp-Cola Co. v. Coca-Cola Company*, 314 F.2d 124, 126 (2nd Cir. 1963).

[30] Shay Decl. at ¶ 37.

[31] *Id*. at ¶ 39-40 (citing Def's Mem. at 9-10).

this action was filed and statements made in response to the filing of the declaratory judgment action could not have formed a basis for the "reasonable apprehension of litigation" requirement at the time the action was filed.

As a fourth factor, Plaintiff relies upon the allegation that Defendant has begun to use its trademark "in connection with a number of additional products."[32] However, there are no specifics provided about this allegation. It is Plaintiff's burden to produce such evidence and to show the connection between an action by Defendant and its claimed immediate apprehension of litigation. Plaintiff has failed to meet that burden.

The Court finds that Plaintiff has not met its burden of showing that Defendant's conduct created a real and reasonable apprehension of suit at the time of the filing of this action on July 7, 2006. Thus, it has failed to meet the first prong of the test for jurisdiction in a declaratory judgment action–objectively reasonable apprehension of an infringement suit. Therefore, Defendant's Motion to Dismiss will be granted.

D.     12(b)(6) Motion

Because this Court has determined that it does not have jurisdiction in this case, it need not address Defendant's alternative Motion to Dismiss the third cause of action for failure to state a claim.

---

[32] *Id.* at ¶ 41-42.

## IV.  ORDER

Based upon the foregoing it is therefore

ORDERED that Defendant's Motion to Dismiss for lack of jurisdiction (Docket No. 9) is GRANTED.  It is further

ORDERED that the Complaint is DISMISSED WITHOUT PREJUDICE for lack of jurisdiction and this case may be closed.

DATED October 31, 2006.

BY THE COURT:

_____
TED STEWART
United States District Judge